IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RONNIE WILLIAMS / RONALD      )
VINCENT WILLIAMS, #239 426,   )
                              )
        Plaintiff,            )
                              )
        v.                    )    CIVIL ACTION NO. 2:16-CV-110-MHT
                              )              [WO]
WALTER MYERS, *et al.*,       )
                              )
        Defendants.           )

*     *     *     *     *     *

RONALD VINCENT WILLIAMS /     )
RONNIE WILLIAMS, #239 426,    )
                              )
        Plaintiff,            )
                              )
        v.                    )    CIVIL ACTION NO.: 2:16-CV-198-MHT
                              )              [WO]
WALTER MYERS, *et al.*,       )
                              )
        Defendants.           )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION

Plaintiff Ronald Vincent Williams ["Williams"], an inmate incarcerated at the Loxley

Work Release Center in Loxley, Alabama, brings 42 U.S.C. § 1983 claims against Warden Walter

Myers, Patrice Richie, Patrick Hampton, Sherry Lightner, and Larry Anglin.[1]  Williams seeks to

---

[1]  Williams originally filed this action in the United States District Court for the Southern District of Alabama on August 28, 2015. By order entered February 19, 2016, that court transferred Williams' amended complaint to this court with respect to the individuals who remained as defendants. *See* Docs. 20, 22, 27, 28. In accordance with the prior proceedings and orders entered in this matter, this matter is before the court on Williams amended complaint regarding his access to courts claim against Defendant Myers filed on December 30, 2015, the amendment to the amended complaint filed on March 30, 2016, in which Williams named Defendants Richie and Hampton as additional defendants, a second amendment to

challenge the constitutionality of matters arising during his incarceration at the Easterling Correctional Facility including a denial of access to the courts, Defendants' improper use of false or incorrect information related to his "true identity" to engage in improper conduct or activities, and being subject to retaliation for filing complaints. Williams seeks his release from prison or a grant of early parole, that he be given his true and correct identity, and that he be awarded $8.3 million in damages.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Williams' claims for relief. Docs. 78, 79, 81.  In these filings, Defendants deny they acted in violation of Williams' constitutional rights.  Upon receipt of Defendants' special report, the court issued an order directing Williams to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Williams "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment." Doc. 93 at 2. Williams responded to Defendants' special report, *see* Docs. 383, 87, 95, 96, 108, 111, but his responses do not demonstrate there is any genuine issue of material fact. *See* Doc. 93. The court will treat Defendants' report as a motion for summary judgment and resolve this motion in their favor.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam);

---

the amended complaint filed June 1, 2016, in which Williams added Defendants Lightner and Anglin as additional defendants, *see* Docs. 20, 32, 34, 57, 59, and the complaint and amended complaint filed in Civil Action No. 2:198-CV-MHT (Docs. 1, 8).

Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").   The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Williams to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P.

56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also United States v. Stein*, 881 F3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). "Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 Fed. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *See Beard v. 9Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate this court disregard elementary principles of production and proof in a civil case. Here, Williams fails to demonstrate the requisite genuine dispute of material fact to preclude summary judgment on his claims. *See Matsushita*, 475 U.S. at 587.

### III. DISCUSSION[2]

#### A.    Injunctive Relief

Williams seeks release from prison or early parole. When the effect of granting equitable relief under the civil rights statute would be to substitute a § 1983 action for a federal writ of habeas corpus challenging the basis for ongoing detention or for a petition under § 2254 attacking a state court conviction and/or sentence, a prisoner fails to state a claim under § 1983. *See Eutzy v. Tesar*, 880 F.2d 1010, 1011 (8th Cir. 1989); *Preiser*, 411 U.S. 475, 500 (1973). A plaintiff, therefore, cannot seek declaratory or injunctive relief relating to his confinement and/or conviction in a § 1983 action. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Heck v. Humphrey*, 512 U.S. 477,

---

[2]  To the extent Williams raises additional allegations of constitutional violations through papers that were not affirmatively pled in his complaint, the court will not consider them. Under settled law, a plaintiff may not "amend" his complaint through his opposition by raising a new claim(s). *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised during summary judgment proceedings); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (finding the Rules of Civil Procedure do "not afford plaintiffs with the opportunity to raise new claims at the summary judgment stage."). The court, therefore, addresses Williams' claims against Defendants as alleged in the complaint and considers only facts relevant to those claims. *See Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not amended the complaint).

483-89 (1994); *Preiser*, 411 U.S. at 500 ("when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"). Williams' request for injunctive relief is, therefore, due to be dismissed.

**B.     Absolute Immunity — Official Capacity Claims**

To the extent Williams requests monetary damages from Defendants in their official capacities, they are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment

immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala*., 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, Defendants, as employees of the Alabama Department of Corrections or acting as state agents, are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

## C.    Qualified Immunity — Individual Capacity Claims

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute the correctional defendants here were acting within the course and scope of their discretionary authority when the incidents occurred. Williams must, therefore, allege facts that, when read in a light most favorable to him,

show that the correctional defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and citations omitted). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (quotation marks and citations omitted). The controlling authority is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." See *id*. at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210. "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may

analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

**D.    The Section 1983 Claims**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.  In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Williams alleges Defendants have violated his constitutional rights by: 1) denying him access to the courts; 2) relying on false or incorrect information regarding a similarly named inmate to deny him access or placement in favorable or rehabilitative prison programs and to allow Defendants to defraud the government by using the erroneous information regarding his identity to fund mental health and substance abuse programs ("SAP") in which he was not enrolled, did not participate, or which did not exist at Easterling; and 3) retaliating against him for filing lawsuits by placing him in a predominantly homosexual dorm and denying him adequate access to the law library.

**E.     Access to Courts Claim**

Williams asserts Defendant Myers denied him access to the courts by denying him adequate access to the law library, legal materials, computers, and typewriters. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons who are trained in the law." *Id*. at 828. To establish a violation of the right to access to the courts, however, a prisoner must allege facts sufficient to show that: (1) a non-frivolous legal attack on his conviction, sentence, or conditions of confinement has been frustrated or impeded, and (2) he has suffered an actual injury as a result. *Lewis v. Casey*, 518 U.S. 343, 353-55 (1996). The *Lewis* Court disclaimed any expansions of the right of access to the court which suggested "that the State must enable the prisoner to discover grievances, and to litigate effectively once in court. . ."  To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] . . . the Constitution requires."  *Id*. at 354 (emphasis in original).

The *Lewis* Court discerned that the actual injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement. . . .  [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." 518 U.S. at 356-357.  "[T]he Constitution does not require that prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance."  *Id*. at 360.  The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that

inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts.  *Id*. at 356.  A federal district court must " 'scrupulously respect[] the limits on [its] role,' by 'not . . . thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.'  [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500."  *Id*. at 363.  An "actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id*. at 348. There must be evidence of deterrence of a nonfrivolous claim "such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." *Wilson v. Blankenship*, 163 F.3d 1284, 1290-91 (11th Cir. 1998); *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1271 (11th Cir. 2010) (finding the complaint must describe the underlying claim "well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope.").

Here, Williams fails to demonstrate that Defendant Myer or any other correctional official engaged in conduct which precluded his pursuit of a non-frivolous direct or collateral attack upon either his criminal conviction or sentence or the conditions of his confinement. *See Lewis*, 518 U.S. at 355 (right to access to the courts protects only an inmate's need and ability to "attack [his] sentence[ ], directly or collaterally, and. . . to challenge the conditions of [his] confinement."). Impairment of the capacity to litigate any other interest is "simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* ("*Bounds*  does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.").  And Williams has not shown that a non-frivolous claim was lost or rejected due to his perceived impairments regarding

the adequacy of Easterling's law library. *See Petrick v. Maynard* 11 F.3d 991, 995 -996 (10th Cir.

1993) ("[A] prisoner must do more than make a mere conclusory allegation of need for unspecified

or unlimited materials.").

The court finds no evidence Williams suffered actual injury to a nonfrivolous legal action

caused by any Defendant, that "a complaint he prepared was dismissed," or that he was "so

stymied" by prison officials' actions that "he was unable to even file a complaint," direct appeal,

or petition for writ of habeas corpus that was not "frivolous." *Lewis*, 518 U.S. at 351. The conduct

and actions of Defendant Myers challenged by Williams either do not fall into one of these

categories or, if they do, fail to establish the requisite injury. Defendants are entitled to qualified

immunity on Williams' access to courts claim.

## F.    False Information Claim[3]

Williams states Defendants have received written complaints from him which have

apprised them of his true name and identity—Ronald Vincent Williams, a black male, D.O.B.

XX63, S.S. X648, Mobile Co. Al.—but complains they have "falsely and knowingly

misrepresented fraudulent material and facts belonging to a "Ronnie Williams—D.O.B. XX62,

AIS #124453—a sex offender known to receive mental health treatment.[4] Because of the alleged

misidentification, Williams complains his custody classification has been affected, he has been

denied the opportunity to engage in favorable prison educational and trade programs, and

---

[3]  Williams makes numerous references to the actions of Defendants as being violative of his Fifth Amendment rights.  The court notes the Fifth Amendment Due Process Clause applies "only to actions of the federal government—not to those of state or local governments." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001); *see also Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

[4]  According to the website maintained by the Alabama Department of Corrections— *available at http://www.doc.state.al.us/inmateinfo*—an inmate named "Ronnie Williams" is in ADOC custody with an assigned inmate identification number of AIS124453 but his birth year does not match the birth year information provided by Williams.

Defendants have defrauded the government by accepting government funds for programs which do not exist at Eastlering or in which he did not actually participate.[5]

Williams is confined in the Alabama state prison system on a sentence of twenty years imposed upon him in 2005—under the name "Ronnie V. Williams"— by the Circuit Court of Mobile County, Alabama for a manslaughter conviction. When an inmate is sentenced to the Alabama Department of Corrections ("ADOC"), the inmate is identified according to the name and other identifying information provided by the Circuit Clerk of the county of conviction through a certified transcript verifying the accuracy of the information contained therein. The Central Records Division of the ADOC enters an inmate's information as contained in the certified transcript and classification personnel do not have the capability to input or delete this information. Defendants' evidence indicates Williams is the only "Ron[] Williams" with the middle initial "V" and AIS #239436 in the AODC's computer system containing inmate demographics and files. ADOC personnel have no authority to change any information in transcripts received from state circuit clerks and, pursuant to ADOC policy, information cannot be changed in the agency's system unless an amended court transcript or an order from a court of competent jurisdiction is received directing a change.[6] Defendants deny any knowledge of identifying Williams under any other name than as maintained in the computer records of the ADOC.  And Defendants categorically deny engaging in any conduct designed to defraud the government to obtain funds

---

[5]  The court notes Williams' repeated challenges to Defendants' alleged use of his—or a similarly named inmate's—name and identity in an effort to commit a fraud on the government. In and of itself, this assertion does not implicate a violation of any constitutional right to which Williams is entitled. *See West*, 487 U.S. at 48.

[6]  Defendants' evidence reflects that the Director for Central Records personally contacted the Mobile County Circuit Clerk's office and personnel there verified that the identifying information in the ADOC's records regarding Williams matched the information on his state criminal transcript. Doc. 78-2.

for prison programs that do not exist or in which an inmate, including inmate Williams, did not participate or enroll. Docs. 78-1, 78-2, 78-3, 78-4, 78-6, 78-8.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution.   The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir. 1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*.   In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole.   *Slocum*, 678 F.2d at 941.   The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors.   Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information.   We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration.   *Id.* at 942.   We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files.   *Id.*   In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender.   As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442.   *Slocum* controls the disposition of the instant false information claim.

Defendants deny identifying Williams under any other name than as it is maintained in the ADOC system based on information provided by the state court of conviction via a verified transcript of the inmate's current sentence. Defendants maintain that reliance on this information did not infringe on any of Williams' constitutional rights nor have they used any inmate's identity to engage in fraudulent behavior.  Of specific importance, there is no admission by any defendant

that the information used to assign Williams to treatment programs or a particular dormitory was false, fabricated, incorrect or erroneous. Docs. 78-3–78-7; *see also* Docs. 103–106—*Responses and Objections to Plaintiff's Interrogatories.* Williams has failed to come forward with any evidence which indicates that Defendants knowingly used false, fabricated, or incorrect information when making dorm assignments or assignments to prison programs over which they had placement authority. Moreover, Williams' allegations regarding the use of fabricated, false, or incorrect information does nothing more than raise the possibility that information in his records may be false or incorrect and this mere possibility fails to provide a basis for relief.[7] *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

The record establishes that Defendants did not rely on ***admittedly*** false, fabricated, or incorrect information regarding the matters about which Williams complains. Consequently, Defendants are entitled to qualified immunity on this claim.

## G.    Retaliation

Williams alleges that in retaliation for filing previous lawsuits against Defendants and other prison officials, he was denied adequate access to the library and was assigned to an "unworthy" dorm—Dorm C. According to Williams, Dorm C houses many homosexuals and during his assignment to the dorm he suffered two infections to his facial area.

Defendants deny taking any action against Williams in retaliation for his filing lawsuits. Defendant Myers maintains Williams was afforded adequate access to the law library. Defendant

---

[7]  Williams' evidence of an old conviction report reflecting his birth year as XX63 (*see* Doc. 87-1) instead of XX62 as contained in state circuit court's conviction record for the conviction and sentence on which Williams is currently confined (*see* Doc. 78-1 at 5), does not change the court's analysis of his false information claim.

Lighter states she received a request slip from Williams in September 2015 seeking a transfer to another facility so he could work on his legal issues. While Defendant Lightner has no knowledge regarding the adequacy of Easterling's law library, pursuant to Williams' request, she prepared a social service action form which she emailed to the ADOC transfer division in an effort to accommodate Williams' request for transfer. According to Defendant Richie, she states she has no knowledge of bed assignments being made for retaliatory reasons. Defendants Lightner and Anglin, as classification personnel, have no responsibility regarding inmate dorm or bed assignments and deny taking any retaliatory actions against Williams.  Docs. 78-3, 78-4, 78-6, 78-7.

A claim that a plaintiff was penalized for exercising a constitutional right is properly considered under the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) (*en banc*). The First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits. *Wright v. Newsome*, 795 F.2d 964 (11th Cir. 1986); *Farrow v West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989).  Conclusory allegations of retaliation, however, cannot demonstrate the existence of each element requisite to establishing retaliation.  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266 (11th Cir. 2009), *overruled on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012), (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit ... conclusory allegations as true"); *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

In ruling on an inmate's First Amendment retaliation claim, courts use a burden shifting analysis. *Moton v. Cowart*, 631 F.3d 1337, 1341–42 (11th Cir. 2011). Williams must establish three elements: "(1) 'his speech or act was constitutionally protected'; (2) 'the defendant's retaliatory conduct adversely affected the protected speech'; and (3) 'there is a causal connection between the retaliatory actions and the adverse effect on speech.'" *Id*. at 1341 (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X*, 175 F.3d at 397.   Regarding the causation prong a court "asks whether the defendants were subjectively motivated" by the plaintiff's protected act.  *Smith*, 532 F.3d at 1278. If the plaintiff shows that "his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Moton*, 631 F.3d at 1341–42 (quoting *Smith*, 532 F.3d at 1278). Upon production of evidence demonstrating a legitimate reason for the conduct and/or actions in question, the plaintiff, with the ultimate burden of proof, must show there is a genuine dispute of material fact concerning the defendant's defense.  *See Osterback v. Kemp*, 300 F.Supp.2d 1238, 1254 (N.D. Fla. 2003). Federal courts must "carefully scrutinize" retaliation claims brought by prisoners challenging adverse actions of correctional personnel, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), and "approach prisoner claims of retaliation with skepticism and particular care. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). This is [necessary because prisoners']  . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Although Williams' prior lawsuits are constitutionally protected speech, the second element requires him to demonstrate that the challenged actions "would likely deter a [prisoner] of ordinary firmness" from filing complaints challenging the behavior of correctional officers. *Smith*, 532 F.3d at 1277. This "presents an objective standard and a factual inquiry." *Id.* Although Williams' allegations do not appear to rise to this level, the court assumes *arguendo* that this standard is met. However, Williams fails to satisfy the third requisite element of a retaliation claim - a causal connection between his constitutionally protected activity and the adverse actions of Defendants.

The causal connection inquiry focuses on the "subjective motivation of the defendants." *Thaddeus-X*, 175 F.3d at 399. The subjective motivation issue is resolved by most courts under the burden-shifting formula in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). This formula requires that Williams first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then "the burden of production shifts to the defendant. If the defendant can show he would have taken the same action absent the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X,* 175 F.3d at 399 (citing *Mt. Healthy*, 429 U.S. 274).

Defendants deny the allegations of retaliation made by Williams and/or deny any awareness or involvement in the actions which serve as the basis for his claims of retaliation. To the extent Williams argues the mere fact he filed prior lawsuits against Defendants or other correctional officials supports his retaliation claim, he produces no evidence beyond his own conclusory allegations that the challenged actions of the correctional defendants were causally related to that conduct. "A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision 'subject to exhaustive challenge,' solely because he was engaged in a

First Amendment right." *Adams v. James*, 784 F.2d 1077, 1082 (11th Cir. 1986); *Adams v. James*, 797 F. Supp. 940, 949 (M.D. Fla. 1992)." *Cranford v. Hammock*, 2010 WL 916031 *8 (N.D. Fla. 2010).

Here, Williams provides no facts from which the court could, at a minimum, infer a retaliatory motive by any defendant beyond his allegation that the challenged conduct occurred in retaliation for complaints he filed against Defendants and other ADOC officials. No evidence has been presented that Defendants knew of Williams' previous litigation or that they were affected by it, or that these defendants had any input or involvement in the alleged retaliatory conduct. Rather, Williams does nothing more than make the conclusory allegation that Defendants knew of his prior litigation activity and that their conduct regarding his access to the law library and his dorm assignments was motivated by retaliation. This allegation is insufficient to defeat summary judgment. *Waddell v. Valley Forge Dental Associates, Inc*., 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

The record before the court is devoid of admissible or potentially admissible evidence, direct or otherwise, from which a reasonable fact finder could infer the requisite motivating factor on the alleged acts of retaliation. And the circumstances, when taken as a whole, do not support making such inferences. Because Williams' allegations against the correctional defendants fail to support a First Amendment retaliation claim, they are entitled to qualified immunity.

## H.     The Housing Claim

Williams asserts a denial of due process under the Fourteenth Amendment because of Defendants' failure to transfer him from Easterling or assign him to a particular dorm at the facility. To establish a denial of due process under the Fourteenth Amendment, Williams  must allege that

a constitutionally protected life, liberty, or property interest was at stake. The Constitution itself does not give prisoners an interest in being classified to a particular facility or a particular area within a penal facility. *See Meachum v. Fano*, 427 U. S. 215, 224 (1976) ("The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution."). Further, the law is well settled that prison administrators are accorded wide deference in determining the policies and procedures for handling inmate populations, and federal courts rarely interfere in such discretionary decisions. *See generally Sweet v. South Carolina Department of Corrections*, 529 F.2d 854, 859 (4th Cir. 1975) (*en banc*) (describing federal court's deference to prison administrators and all administrative matters unless the condition rises to the level of a constitutional violation).

While a state can create a constitutionally protected liberty interest, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976), quoted in *Sandin*, 515 U.S. at 480; *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("The transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.")

Williams has not shown that being housed at Easterling—or in any particular area of the institution—deprived him of a liberty interest inherent in the Constitution. *See Sandin*, 515 U.S. at 484. His allegations do not include facts upon which a State-created liberty interest could be found, nor has he alleged any facts which show that his confinement at any particular institution or  area of an institution amounted to a dramatic departure from the ordinary conditions of confinement. *Id.* at 485-87. Because Williams has not alleged the deprivation of a protected liberty interest, his complaints regarding his housing assignment fail to state a due process claim.  *See id*. at 487; *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997).  Defendants are entitled to qualified immunity on this claim.

I.     **Access to Favorable Prison Programs**

To the extent Williams asserts Defendants violated his Fourteenth Amendment right to due process by denying him enrollment or participation in various rehabilitative programs at Easterling, he is entitled to no relief.  Williams, as an inmate in the Alabama prison system,  has no  state-created liberty interest which entitles him to participation in favorable prison programs, including education or trade classes. Put another way, an inmate has no constitutionally protected liberty interest in rehabilitative or educational programs in prison as failing to place an inmate in such programs does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Moore v. Weeden*, 2010 WL 737655, at *4 (D. R.I. Mar. 1, 2010) (finding "the ability to participate in a rehabilitative prison program does not implicate a liberty interest."); *Ventre v. Forgues*,  2013 WL 597643, at *4 (D. Mass. Jan. 16, 2013) (internal quotation marks and citations omitted) (finding "[p]rison programs and employment are discretionary opportunities and plaintiff cannot argue that he has legitimate

entitlement to such opportunities or that the lack of such opportunities creates an atypical and significant hardship.").

## J.      Respondeat Superior

To the extent Williams seeks to hold the supervisory defendants liable based on his or her position, supervisory personnel cannot be liable under § 1983 for a constitutional violation of one of their subordinates via a theory of *respondeat superior* or based on vicarious liability. Settled law holds "that Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability]. . . . A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties.  Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation and parentheses omitted); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (holding that a supervisory official "can have no *respondeat superior* liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of *respondeat superior* or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999 (holding that 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability.). "Absent vicarious liability, each

Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.

The supervisory defendants may be held liable only if their actions bear a causal relationship to the purported violations of Williams' constitutional rights. To establish the requisite causal connection and avoid entry of summary judgment in favor of these defendants, Williams must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so...." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Defendants as supervisory officials] directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted demonstrates Williams has failed to meet this burden.

Williams presents no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which any supervisory defendant failed to take corrective action. Nor has he presented any evidence that the challenged conduct occurred pursuant to any policy enacted by a supervisory defendant. Finally, the record is devoid of evidence to support an inference that any supervisory defendant directed a subordinate officer or defendant to act unlawfully or knew that they would act unlawfully and failed to prevent their conduct. Williams, therefore, has not shown there is any causal connection between the actions of any supervisory defendant and the alleged constitutional deprivations. *See generally Ashcroft*, 556 U.S. 678 (noting a complaint does not satisfy Fed.R.Civ.P. 8 or Fed.R.Civ.P. 12(b)(6) if it only "tenders 'naked assertion[s]' devoid of

'further factual enhancement'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 557 (2007)). Defendants are entitled to qualified immunity on this claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Defendants' motion for summary judgment (Docs. 78) be GRANTED.

2.      Judgment be GRANTED in favor of Defendants.

3.      This case be DISMISSED with prejudice.

4.      Costs be taxed against Plaintiff.

It is further

ORDERED that on or before **February 27, 2019**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 13th day of February 2019.


    /s/    Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE